# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **KYLE HUBBELL AND HOLLY HUBBELL,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 21-CV-0341-CVE-JFJ** |
| | ) | |
| **STATE FARM FIRE AND CASUALTY COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Now before the Court are the following motions: Defendant State Farm Fire and Casualty Company's Motion for Partial Summary Judgment and Brief in Support (Dkt. #25); Plaintiffs' Motions *in Limine* and Brief in Support (Dkt. # 27); Defendant State Farm Fire and Casualty Company's Motion in Limine Regarding Alleged Roof Repairs to Other Homes (Dkt. # 28); Defendant's Motion in Limine Regarding Evidence of Interior Damage, and Brief in Support (Dkt. # 29); Defendant's Motion in Limine Regarding Punitive Damages, and Opening Brief in Support (Dkt. # 30); Defendant State Farm Fire and Casualty Company's Omnibus Motion in Limine (Dkt. # 31); and Defendant State Farm Fire and Casualty Company's Motion to Limit Testimony of Greg Cannon and Opening Brief in Support (Dkt. # 33). Defendant State Farm Fire and Casualty Company (State Farm) requests summary judgment on plaintiffs' bad faith claim, because State Farm conducted a prompt investigation into plaintiff's insurance claim and there is a legitimate dispute as to plaintiffs' demand for total roof replacement. Dkt. # 25. Plaintiffs respond that State Farm limited its investigation to hail and wind damage only, and State Farm acted in bad faith by

failing to consider all possible causes of roof damage during its investigation.  Dkt. # 35.  Both parties have filed motions in limine to exclude evidence at trial

## I.

State Farm issued a homeowner's insurance policy to Kyle and Holly Hubbell for the property located at 18593 East 79th Street North, Owasso, Oklahoma.  Dkt. # 25-1, at 1.  The effective period of the policy was from July 1, 2020 to July 1, 2021.  Id.  As to the dwelling structure, State Farm agreed to "pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in Section I – Losses Not Included or otherwise excluded or limited in this policy."  Id. at 19.  Coverage B of the policy applies to personal property, and State Farm agreed to pay for "accidental direct physical loss to the property" except to losses excluded or limited by the policy.  Id.  For coverage B, the policy excludes damage to personal property caused by "windstorm or hail . . . unless the direct force of wind or hail damages the structure causing an opening in a roof or wall and the rain, snow, sleet, sand, or dust enters through this opening."  Id.

On April 14, 2021, Kyle Hubbell made a claim for wind and hail damage to the roof of the house and a detached garage, as well as damage to gutters, screens, and an outdoor fire pit.  The storm giving rise to claim took place on July 11, 2020.  Dkt. # 25-2, at 1.  Johnny Gage, an independent insurance adjustor, was assigned to the claim and he scheduled an inspection of plaintiffs' property for April 24, 2021.  Plaintiffs were not present when the inspection took place, but Jordan Gray of Native Roof Co. was present on behalf of plaintiffs.  Id. at 3.  Before the inspection, Gage reviewed an exterior image of the property, plaintiffs' insurance policy, and a weather report verifying that a hail storm took place on July 11, 2020.  Dkt. # 25-5, at 3-4.  Gage found minor hail damage to the shingles on the roof of the house, but he found no evidence that wind

damaged the roof shingles.  Dkt. # 25-2, at 3.  There was evidence of "heavy foot traffic" and foot falls on the front slope of the roof, but this had nothing to with damage caused by hail.  Id.  Gage concluded that there was insufficient damage caused by hail to warrant full replacement of the roof of the house.  Id.  Gage also inspected the roof of a detached garage and found evidence of hail strikes on the roof shingles, but he found that the amount of damage did not require replacement of the garage roof.  Id.  Gage did not inspect the interior of the home or the garage, because plaintiffs did not make a claim for interior damage.  Id.

Gage prepared an estimate for the replacement of some shingles on the roof of the house and garage, and he included damage to soft metal structures, window screens, and light fixtures as part of the estimate.  Dkt. # 25-3.  Gage contacted Holly Hubbell and notified her of the outcome of the inspection, and she made it clear to Gage that she was dissatisfied with the outcome of the claim.  Dkt. # 25-2.  Gage advised Holly Hubbell that she had a right to request a second inspection.  Id.  State Farm subtracted the policy deductible and amounts for depreciation, and issued plaintiffs a payment of $1,174.69.  Dkt. # 25-6.

Plaintiffs did not request a second inspection by State Farm, and they did not directly have any additional communication with State Farm about their insurance claim.  On July 12, 2021, plaintiffs filed a petition in Rogers County District Court alleging claims of breach of contract and bad faith against State Farm, and State Farm removed the case to this Court.  Dkt. # 2.  The petition states that this case involves a "wind and hail loss" that occurred at plaintiffs' home.  Dkt. # 2-1, at 1.  The parties submitted a joint status report, and plaintiffs stated that State Farm has failed to fully reimburse plaintiffs after "a severe storm caused wind and hail damage."  Dkt. # 13, at 1.  Plaintiffs have provided State Farm a series of estimates for the cost of a new roof ranging from $41,194.25

3

to $76,922.  Dkt. # 25-7; Dkt. # 25-8; Dkt. # 25-9; Dkt. # 25-10.  In a sworn statement for loss signed by both plaintiffs, they specifically reference "hail" as the cause of the damage giving rise to the need for a new roof.  Dkt. # 25-10.

## II.

State Farm argues that it acted reasonably during its investigation and settlement of plaintiffs' insurance claim for wind and hail damage, and that State Farm has a legitimate basis to dispute the existence of coverage for plaintiffs' claim.  Dkt. # 25, at 13-15.  Plaintiffs respond that State Farm had a contractual obligation to consider any cause of damage to plaintiff's property, and they argue that State Farm has acted in bad faith by focusing only on storm damage as the only possible cause for a covered loss under the policy.  Dkt. # 35.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317.  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the

record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

The Oklahoma Supreme Court has held that "an insurer has an implied duty to deal fairly and act in good faith with its insured and that the violation of this duty gives rise to an action in tort for which consequential and, in a proper case, punitive, damages may be sought." Christian v. Am. Home. Assurance Co., 577 P.2d 899, 904 (Okla. 1977). "The core of a bad-faith claim 'is the insurer's unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy.'" Flores v. Monumental Life Ins. Co., 620 F.3d 1248, 1255 (10th Cir. 2010) (quoting McCorkle v. Great Atl. Ins. Co., 637 P.2d 583, 587 (Okla. 1981)). To succeed on a bad faith claim, plaintiffs "must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment of [plaintiffs'] claim." Oulds v. Principal Mut. Life Ins. Co., 6 F.3d 1431, 1436 (10th Cir. 1993); accord Shotts v. GEICO Gen. Ins. Co., 943 F.3d 1304, 1314 (10th Cir. 2019). According to the Tenth Circuit, courts generally use a two-step analysis to determine whether a plaintiff has made a sufficient showing of bad faith. Shotts, 943 F.3d at 1314-15. The Court considers 1) "whether there is a legitimate dispute between the

insurer and the insured regarding coverage or the value of the claim"; and 2) "if the court determines there is a legitimate dispute between the parties, . . . whether the plaintiff offered specific additional evidence to demonstrate bad faith." Id. at 1315. "The additional evidence required for this showing" may include evidence that 1) "the insurer did not *actually* rely on th[e] legitimate [dispute] to deny coverage"; 2) the insurer "denied the claim for an illegitimate reason"; 3) the insurer "otherwise failed to treat the insured fairly"; and 4) "the insured performed an inadequate investigation of the claim." Id. (internal quotations and citations omitted) (emphasis and alterations in Shotts, 943 F.3d at 1315).

State Farm argues that it promptly inspected plaintiffs' property after they submitted a claim for hail and wind damage, and State Farm acted reasonably by offering $1,174.69 to fully resolve plaintiffs' claim. The evidence shows that plaintiffs made a claim for wind and hail damage on April 14, 2021, and an independent adjustor, Gage, was assigned to investigate the claim. Dkt. # 25-2, at 1. Gage found minimal hail damage to the roof of the home and detached garage, although plaintiffs dispute Gage's findings and argue that a total roof replacement is warranted. Plaintiffs now assert that Gage should have looked for any cause of "direct accidental physical loss," rather than just damage caused by wind or hail. Dkt. # 35, at 21. This argument fails for two important reasons. Plaintiffs raised this argument for the first time in response to State Farm's motion for summary judgment, and plaintiffs' insurance claim referenced only wind and hail damage as the basis for the claim. Plaintiffs' petition (Dkt. # 2-2) and the joint status report (Dkt. # 13) specifically list wind and hail damage as the basis for plaintiffs' insurance claim. State Farm's alleged failure to consider causes of damage other than wind and hail does not show that State Farm acted in bad faith when it denied plaintiffs' claim, because plaintiffs never gave State Farm notice that other sources of

damage could be relevant to their insurance claim.  Even more importantly than the lack of notice to State Farm, plaintiffs have also produced no evidence that something other than wind or hail damaged their roof, and this argument is wholly irrelevant.  The only other possible source of damage to the roof is the "heavy foot traffic" identified by Gage during his inspection, but Holly Hubbell testified in her deposition that there had been no repairs or other activities that would have required anyone to be on the roof during plaintiffs' ownership of the home.  Dkt. # 45-2.  Thus, even if foot traffic on the roof were a covered cause of a loss, the loss did not occur during the period the policy was in effect, and State Farm's alleged failure to investigate damage caused by "heavy foot traffic" would not support a bad faith claim against State Farm.

The Court finds that the evidence establishes that there is a legitimate dispute concerning coverage for plaintiffs' roof damage claim, and plaintiffs have not produced any evidence tending to show that State Farm acted in bad faith.  There is no dispute that State Farm conducted a timely investigation of plaintiffs' claim for wind and hail damage to their roof and that State Farm promptly made an offer of payment to resolve the claim.  Both parties have obtained expert testimony and other evidence in support of their position concerning the need to replace plaintiffs' roof, and State Farm clearly has a legitimate basis to dispute coverage in this case.  Dkt. # 33-1 (report of plaintiffs' expert Greg Cannon that State Farm is obligated to pay for a total roof replacement); Dkt. # 45-1 (report of State Farm's expert Michael Berryman noting only minimal hail damage to plaintiffs' roof).  Plaintiffs were unhappy with the outcome of the claim, and State Farm notified plaintiffs that they could request a second inspection of their roof.  Plaintiffs declined to request a second inspection and filed a lawsuit without engaging in any other attempts to resolve their insurance claim.  Plaintiffs are correct that they were not obligated to request a second inspection, but

plaintiffs' failure to engage in any meaningful dialogue with State Farm concerning their insurance claim weighs against a finding that plaintiffs were treated unfairly or that State Farm conducted an inadequate investigation.  In an attempt to overcome the lack of evidence of bad faith, plaintiffs have created a new theory of liability that State Farm should have investigated all possible sources of roof damage.  However, plaintiffs have wholly failed to show that State Farm had notice that would have prompted Gage to look for another cause of damage or that Gage would have actually found that something other than wind or hail damaged plaintiffs' roof.  State Farm's motion for summary judgment (Dkt. # 25) as to plaintiffs' bad faith claim is granted, but plaintiffs' breach of contract claim remains pending for trial.

### III.

Both parties have filed motions in limine to limit or exclude evidence that may be offered at trial.  "The purpose of a motion in limine is to aid the trial process by enabling the Court 'to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitively set for trial, without lengthy argument at, or interruption of, the trial.'"  Mendelsohn v. Sprint/United Management Co., 587 F. Supp. 2d 1210, 1208 (D. Kan. 2008).  However, a court is almost always better situated to make evidentiary rulings during trial, and a court may defer an in limine ruling unless the party seeking to exclude evidence shows that the evidence is inadmissible on all potential grounds.  Wright v. BNSF Railway Co., 2016 WL 1611595, *1 (N.D. Okla. Apr. 22, 2016).  State Farm removed this case to federal court based on diversity jurisdiction, and the admissibility of evidence is generally governed by federal law.  Blanke v. Alexander, 152 F.3d 1224, 1231 (10th Cir. 1998).  State law concerning the admissibility of evidence will be considered only if the issue

involves a "substantive" state rule of evidence, such as the collateral source rule or the parol evidence rule.  Id.  The parties are advised that all ruling on the motions in limine are preliminary.

**Greg Cannon (Dkt. # 33)**

State Farm asks the Court to prohibit Greg Cannon, plaintiffs' expert, from testifying that plaintiffs' roof is not repairable and that State Farm is contractually obligated to pay the full replacement cost for a new roof.  Dkt. # 33.  State Farm argues that Cannon is not qualified to offer opinions concerning interpretation of plaintiffs' insurance policy, and Cannon failed to apply a reliable methodology in reaching many of his opinions.  Id. at 7.  Plaintiffs respond that Cannon is relying on his expertise, rather than scientific knowledge, and State Farm's arguments concerning the reliability of Cannon's testimony are inapplicable.  Dkt. # 43, at 3.  Plaintiffs also argue that Cannon should be permitted to offer all of the opinions stated in his expert report, because State Farm's challenges to Cannon's methodology are actually just disagreements with Cannon's opinions that can be explored on cross-examination.  Id. at 10-15.

Cannon is a public insurance adjuster and he was retained by plaintiffs to offer expert testimony concerning the extent of wind and hail damage and the availability and amount of insurance coverage pursuant to plaintiffs' insurance policy with State Farm.  Cannon previously worked as a damage restoration general contractor, and he states that he has extensive experience inspecting roof systems for damage caused by wind and hail.  Dkt. # 33-1, at 2.  Plaintiffs' property consists of a house and a detached garage, and both structures have 30 year asphalt architectural roof shingles.  Id.  Cannon summarized State Farm's findings and performed his own inspection on the house only, and Cannon noted extensive storm damage, some of which he claims was missed by State Farm's adjuster.  Id. at 5.  Cannon's expert report contains the following opinions:

- Opinion # 1:  The Hubbell's property was extensively damaged by hail.

- Opinion # 2:  The architectural roof system is not repairable in its current condition and must be replaced.

- Opinion # 3: State Farm owes for the full replacement of the roof system in addition to all other storm damaged items to the property, in order to indemnify the property owner's [sic] according to the coverage afforded in the insurance policy.

- Opinion # 4:  The cost to repair and/or replace damaged property to properly indemnify Mr. and Mrs. Hubbell according to their insurance policy is $96,659.49.

Id. at 5-7.  Cannon found more than 10 hail impacts on a test square on the roof of the house, which he states would indicate need for a full roof replacement under "common insurance adjusting practices."  Id. at 5.  Cannon referenced a document titled "Use of the Repairability Assessment Method for Evaluating Asphlt-Composition Shingle Roof Repairs" concerning the damage caused by attempting to repair, rather than wholly replace, a roof system, and Cannon opines that replacing even one shingle would "cause a cascading consequential damage effect traveling the roof slope . . . requiring a full replacement of each slope . . . ."  Cannon further opines that the damage he found to the roof of the house would qualify as "accidental direct physical loss" under the policy, and the full replacement cost for  plaintiffs' damaged property is $96,659.49.

State Farm took Cannon's deposition and Cannon testified that he considers himself an expert in interpreting insurance policies based on his experience as a contractor and his training to become a licensed public insurance adjuster.  Dkt. # 33-2, at 3-5.  In February 2022, the Hubbells advised their attorneys that they observed water spots on the ceiling inside their house, and it appears that Cannon may offer an expert opinion concerning the cause of this damage if he testifies at trial. Id. at 7-8.  However, it does not appear from the deposition testimony that Cannon had conducted

10

any investigation to determine the cause of the water spots on the ceiling.  Cannon testified that he intends to offer an opinion that the roof of the detached garage needs to be replaced, but he did not actually inspect the garage of the roof and he did not know if had suffered any wind or hail damage. Dkt. # 33-3, at 2.  However, Cannon believes that the roof of the garage needs to be repaired to restore plaintiffs' home to its pre-loss condition, because plaintiffs had structures with matching roofs before the storm.  Id. at 3-5.  Even if the roof of the garage is undamaged, Cannon believes that there is an unstated general principle of "indemnification" that would require replacement of the garage roof, and the policy also contains a "pairs and sets" provision that would apply to the roof of the house and the garage.  Id. at 4-5.  Defense counsel questioned Cannon about the "Repairability Assessment Method" referenced in his report, and Cannon admitted that he did not actually apply the testing methods discussed in the document.  Id. at 7-8.  Cannon claimed that it would damage plaintiffs' roof to conduct the testing required by the "Repairability Assessment Method," and he did not believe such testing was necessary to support his opinion that plaintiffs' roof was not repairable. Id. at 10.

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court held that district courts must initially assess the admissibility of "scientific" expert testimony under Fed. R. Evid. 702.  The Supreme Court extended the gatekeeper role of federal district courts to all expert testimony in Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999).  In Bitler v. A.O. Smith Corp., 400 F.3d 1227 (10th Cir. 2005), the Tenth Circuit discussed the role of district courts when considering a Daubert challenge to the admissibility of expert testimony.  First, the court should make a preliminary finding that the expert is qualified to testify.  Id. at 1232-33.  Next, the proponent of expert testimony must establish that the expert used reliable methods to reach his/her

conclusion and that the expert's opinion is based on a reliable factual basis. Id. at 1233. The Tenth

Circuit cited four factors that district courts should apply to make a reliability determination:

> (1) whether a theory has been or can be tested or falsified; (2) whether the theory or
> technique has been subject to peer review and publication; (3) whether there are known or
> potential rates of error with regard to specific techniques; and (4) whether the theory or
> approach has "general acceptance."

Id. at 1233 (citing Daubert, 509 U.S. at 593-94). The Tenth Circuit was clear that "a trial court's

focus generally should not be upon the precise conclusions reached by the expert, but on the

methodology employed in reaching those conclusions." Id. In other cases, the Tenth Circuit has

emphasized that any analytical gap in an expert's methodology can be a sufficient basis to exclude

expert testimony under Daubert. Trucks Ins. Exchange v. MagneTek, Inc., 360 F.3d 1206, 1212-13

(10th Cir. 2004); Goebel v. Denver & Rio Grande Western R. Co., 346 F.3d 987, 992 (10th Cir.

2003). Under Daubert, "'any step that renders the analysis unreliable . . . renders the expert's

testimony inadmissible. This is true whether the step completely changes a reliable methodology

or merely misapplies that methodology.'" Mitchell v. Gencorp Inc., 165 F.3d 778, 783 (10th Cir.

1999) (citing In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 745 (3d Cir. 1994)).

Plaintiffs argue that the Court should not strictly apply the Daubert factors to determine

whether Cannon's testimony is reliable, and plaintiffs claim that Cannon's experience, rather than

his methodology, should be the primary focus of the Court's analysis. Dkt. # 43. Courts sometimes

apply a more flexible approach to determine whether the testimony of an expert offering opinions

based on his or her experience, rather than on a purely scientific matter, is admissible at trial, but this

flexibility does not allow a court to wholly ignore the Daubert requirements for the admissibility of

expert testimony. Galbraith v. State Farm Fire & Cas. Co., 2018 WL 8343825, *3 (W.D. Okla. July

20, 2018).  The Court must perform its gatekeeper function to determine the admissibility of expert testimony, whether the expert is testifying based on "professional studies or personal experience," and the Court must ensure that any expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  Kumho Tire Co., 526 U.S. at 152.  The Court will consider the Daubert factors when they are applicable, but the Court will also consider any other factor identified by the parties to determine if Cannon is qualified and if his opinions are based on sound methodology.

State Farm argues that Cannon is not qualified to offer an expert opinions concerning "legal opinions on insurance contract interpretation."  Dkt. # 33, at 9.  Cannon states in his expert report that he began working as a general contractor in 2002 and he has "read and interpreted hundreds of insurance policies."  Dkt. # 33-1, at 2.  Cannon has not worked for an insurance company and he has no experience drafting insurance policies, and State Farm argues that this precludes Cannon from offering an opinion that the insurance policy requires State Farm to fully replace plaintiffs' roof.  Dkt. # 33, at 10.  In this case, there are no complex issues of contract interpretation that require either party to offer expert testimony on this issue, and neither party's expert or fact witnesses should offer opinions on the ultimate issue concerning insurance coverage.  Instead, there is a factual dispute as to whether plaintiffs' property suffered wind and hail damage that requires a total roof replacement, rather than the more limited damage found by State Farm's adjuster.  The key policy language in this case is the term "accidental direct physical loss to the property," and this language is not particularly complex in light of the nature of plaintiffs' claim.  Cannon will be prohibited from offering an opinion concerning interpretation of plaintiffs' insurance policy, but the same limitation is equally applicable to any expert testimony offered by State Farm.

State Farm asks the Court to preclude Cannon from offering any opinion concerning alleged damage to the roof of the detached garage, because Cannon admits that he did not inspect the roof of the detached garage and Cannon's opinion on this issue is simply speculation. Dkt. # 33, at 11. Plaintiffs respond State Farm's complaints about Cannon's opinions go to the weight of his testimony, not its admissibility, and Cannon should be permitted to testify that State Farm is required to pay for the roof of the detached garage under the "pairs and sets" provision of the insurance policy. Dkt. # 43, at 10. Cannon testified in his deposition that he did not inspect the roof of the detached garage and he does not even know if the garage sustained any damage during the hail storm. Dkt. # 33-3, at 2-3. Cannon believes that it is likely that the roof of the garage suffered the same damage as the roof of the house, because the roof of both structures was the "same exact roof system, the same exact color, [and] the same exact age." Id. at 3. However, plaintiffs acknowledge that the detached garage was constructed later than the house, and the structures were not constructed at the same time. Dkt. # 33-4, at 3; Dkt. # 33-5, at 2. The Court finds that Cannon should be prohibited from offering any opinion concerning damage to or the need to repair the roof of the detached garage. Cannon made no effort to investigate the condition of the roof of the detached garage, and he has no basis to even opine that the roof of the garage suffered any damage from wind or hail. An expert in the relevant field would not simply have assumed that the house and the garage were a pair or set and would have conducted a reasonable investigation of both structures to determine the actual condition of the roof of each structure. Even if Cannon intended to opine that the structures were a pair or set, he would have been required to investigate the construction history of both structures to determine whether they were actually built at the same time and had the same roof systems. Cannon did not even conduct this minimal investigation before reaching the

conclusion that the roof of both structures needed to be fully replaced, and he will not be permitted to testify that the roof of the detached garage needs to be replaced under plaintiffs' insurance policy.

State Farm asks the Court to prohibit Cannon from offering an opinion that the roof of the house needs to be fully replaced and that repairing damaged shingles would not be feasible. Dkt. # 33, at 15. State Farm argues that Cannon's report and deposition testimony references testing methods to rule out the possibility of repair, rather than full replacement, but Cannon did not actually apply these testing procedures to plaintiffs' roof. Id. at 15-17. Plaintiffs respond that the testing methods referenced by Cannon were inherently destructive and would have damaged plaintiffs' roof, and Cannon acted reasonably be refraining from engaging in the testing. The Court will permit Cannon to testify based on his experience as a contractor that the roof of plaintiff's house is not repairable, but he can not reference testing methods that he did not actually perform to support this opinion. On cross-examination, State Farm may point out that Cannon failed to conduct additional testing to determine if partial repairs of the roof would be feasible, but State Farm has not shown that Cannon should be wholly prohibited from offering an opinion that the roof of plaintiff's house must be fully replaced.

State Farm's final argument as to the admissibility of Cannon's expert testimony is that he should be precluded from offering any opinion that was not disclosed in his expert report. Specifically, Cannon testified at his deposition that the interior of plaintiffs' home showed signs of water damage, and this issue came to his attention after plaintiffs testified in their depositions that they observed water spots inside their home during a snow storm in February 2022. Dkt. # 33-2, at 7-8. Plaintiffs claim that Cannon could not have included this information in his expert report, because the report was prepared before Cannon was aware that plaintiffs had observed interior water

15

damage.  Dkt. # 43, at 14.  The mere fact that references to interior water damage were not included in Cannon's report does not automatically mean that Cannon must be prohibited from testifying about this issue at trial, because it is not clear that he would have known about this issue when he prepared his report.  The more significant problem is that Cannon is merely reciting that he learned from plaintiffs that they observed possible water damage inside their home, and it does not appear that he conducted a timely investigation or prepared a supplemental expert report to give State Farm notice about any possible opinion he might offer about the cause of the interior water damage.  The snow storm during which plaintiffs observed interior water damage occurred over a year and a half after the event giving rise to plaintiffs' insurance claim, and Cannon must do more than simply speculate that the July 2020 hail storm caused interior water damage at a later date.  Cannon will be precluded from testifying about interior water damage unless plaintiffs can produce evidence that Cannon conducted a timely investigation, drafted a supplemental report, and gave notice to State Farm about the basis for any opinion he might offer about the cause of the interior water damage.

**Roof Repairs to Other Homes (Dkt. # 28)**

State Farm argues that plaintiffs may attempt to testify that other homes in their neighborhood had roof repairs or replacements after the July 2020 hail storm, and State Farm seeks to exclude the evidence on grounds that it is not relevant to plaintiffs' breach of contract claim and this evidence would be unfairly prejudicial State Farm.  Dkt. # 28.  Plaintiffs respond that evidence of repairs to other homes tends rebut State Farm's findings that there was little or no hail damage to the roof of their home, and their personal observations on this issue are relevant.  Dkt. # 39.  The Court agrees with State Farm that evidence of repairs to other homes is irrelevant and will unnecessarily delay the trial.  In order for this evidence to be relevant, plaintiffs would be required

to identify specific homes that had a full roof replacement after the storm, the nature and extent of the damage to that home, and whether the roof was paid for by the homeowner or insurance proceeds.  It does not appear that plaintiffs intend to offer such evidence, and they merely intend to make personal observations that other homes received a new roof after the hail storm.  The focus of this case is whether plaintiffs' home was damaged in a July 2020 hail storm, and plaintiffs' personal observations about repairs to other homes are not relevant.   State Farm's request to exclude plaintiffs' testimony concerning repairs to other homes is granted.

**Interior Water Damage (Dkt. # 29)**

State Farm argues that evidence of interior water damage is irrelevant to plaintiffs' breach of contract claim, because this damage was not reported to State Farm when the claim was adjusted and plaintiffs have no evidence showing that the July 2020 hail storm caused this damage.  Dkt. # 29.  Plaintiffs respond that State Farm issued an all-risk policy to plaintiffs and State Farm is responsible for damage from any cause, and State Farm has improperly insisted that plaintiffs file a new claim related to interior water damage.  The claims file shows that State Farm's adjuster, Gage, inspected plaintiffs' home on April 24, 2020 and found some hail damage on the roof of the house and garage, but the damage was insufficient to warrant full roof replacement for either structure. Dkt. # 25-2, at 3.  State Farm contacted plaintiffs to notify them that a payment would be sent to them, and the file contains a note that Gage was closing plaintiffs' claim.  Id. at 2.  Plaintiffs did not request a second inspection and they did not subsequently notify State Farm about the interior water damage.  State Farm invited plaintiffs to file a new insurance claim after it learned about the interior water damage during discovery in this case,  and plaintiffs have declined to file a new claim. The Court finds that it would be premature to decide whether evidence of interior water damage is

17

wholly irrelevant based on the limited record provided by the parties, because the evidence does not rule out that the interior water damage was caused in part by State Farm's failure to fully replace the roof of plaintiffs' home.  However, plaintiffs are advised that they will bear the burden to prove that the interior water damage arose out of damage caused by the July 2020 hail storm, and State Farm is free to argue that plaintiffs are obligated to file a new insurance claim to recover under the policy for the interior water damage first observed by plaintiffs in February 2022.

**Punitive Damages (Dkt. # 30)**

In the event that plaintiffs' bad faith claim survived a motion for summary judgment, State Farm requested that the Court preclude the jury from considering the issue of punitive damages and related evidence until the jury has determined whether State Farm is liable for breaching the insurance contract.   Dkt. # 30.  The Court granted State Farm's motion for summary judgment on plaintiffs' bad faith claim and plaintiff cannot recover punitive damages on their breach of contract claim.   Therefore, State Farm's motion in limine to preclude discussion or evidence relating to punitive damages is granted.

**State Farm's Omnibus Motion in Limine (Dkt. # 31)**

State Farm has filed an omnibus motion in limine identifying ten categories of evidence that it seeks to exclude or limit at trial, and some of the issues raised by State Farm are moot in light of the Court's summary judgment ruling.  Issues one and seven concern evidence that would be relevant only if plaintiffs' bad faith claim remained for trial, and these issues are now moot.  Issue ten is a request to preclude plaintiffs from making any reference to their bad faith claim if the motion for summary judgment were granted, and State Farm's request to exclude this evidence is granted.

Issues two, four, five, six, and nine are uncontested and State Farm's motion is granted as to these issues.

State Farm asks the Court to exclude evidence of other lawsuits against State Farm, because this evidence is irrelevant and unfairly prejudicial to State Farm. Dkt. # 31, at 11. Plaintiffs respond that they intend to ask State Farm's expert witness and corporate representative if they have previously testified in other cases, and this could lead the jury to infer that other cases have been filed against State Farm. Dkt. # 42. Both parties may question expert witnesses about testimony in prior cases to the extent it is relevant to the expert's experience or possible bias, but neither party nor their expert witnesses may discuss the outcome of previous cases. Plaintiffs are advised that they may not generally reference the fact that other lawsuits have been filed against State Farm, because this would be unfairly prejudicial and tend to encourage a verdict in their favor based merely on the fact that State Farm has been named as a defendant in other lawsuits. State Farms' request to wholly exclude references to other lawsuits is denied, but plaintiffs must abide by the limitation that this evidence may be used only as it relates to the experience or possible bias of State Farm's expert witnesses.

State Farm argues that plaintiffs should be prohibited from suggesting that State Farm treated them unfairly due to plaintiffs' alleged delay in filing an insurance claim. Dkt. # 31, at 19. Plaintiffs respond that this is an issue that has been repeatedly raised by State Farm, and State Farm may intend to create the appearance that plaintiffs unreasonably delayed in filing an insurance claim. Dkt. # 42. The jury will necessarily hear the dates on which the hail storm occurred and the filing of plaintiffs' insurance claim, but plaintiffs will not be permitted to speculate that State Farm treated them differently than other claimants unless they have evidence to support this contention. Evidence of

delay may be relevant if the passage of time made it more difficult for State Farm to evaluate plaintiffs' hail damage claim, but State Farm should refrain from merely suggesting that plaintiffs were negligent or dilatory in filing a claim sooner.  State Farm's request to prevent plaintiffs from speculating about the effect of any alleged delay in filing an insurance claim is granted, but the evidence may become admissible if plaintiffs can lay a proper foundation for this evidence.

**Plaintiffs' Motion in Limine (Dkt. # 27)**

Plaintiffs have filed a motion in limine asking the Court to exclude or limit ten categories of evidence, and many of the issues raised by plaintiff are not contested or relevant to this case.  The Court will not discuss the uncontested or irrelevant issues in detail, nor will the Court revisit issues that have already been considered in this Opinion and Order.  The Court finds that State Farm is not likely to offer any evidence falling within issues one, three, seven, eight, and nine, and plaintiffs' motion is granted as to these issues.  The Court will provide the parties some guidance as to the remaining issues, but the parties are advised that all rulings on motions in limine are preliminary and may be revisited at trial.

Plaintiffs ask the Court to preclude evidence that this litigation will tend to increase insurance premiums or rates if State Farm is required to pay additional amounts on their insurance claim.  Dkt. # 27.  State Farm responds that it has an obligation to avoid overpaying on claims and it is generally accepted that if insurers pay too much to resolve claims that premiums for all policy holders will increase.  Dkt. # 38.  It is not clear that State Farm intends to argue that paying the amount requested by plaintiffs will generally increase insurance rates for all of its customers, but it is common knowledge that insurers increase premiums when they are required to pay more to resolve claims made by their customers.  State Farm should refrain from making specific arguments that paying

plaintiffs' claim will generally increase insurance premiums, but incidental remarks by witnesses about the effect of paying claims may be permitted depending on the nature of the witness' testimony.

Plaintiffs argue that State Farm's expert witnesses should be prohibited from offering new opinions at trial that were not previously disclosed in their expert reports or deposition testimony, and State Farm agrees to abide by this requirement as long as it equally applies to plaintiffs' expert witnesses.  The Court finds that plaintiff's request to exclude new expert opinions is granted, and the parties are advised that both parties are prohibited from offering previously undisclosed expert opinions at trial.

Plaintiffs assert that the "mend the hold" doctrine prohibits State Farm from offering new reasons to deny their insurance claim that differ from the reasons stated in State Farm's original denial of their claim.  Dkt. # 27, at 6-7.  Plaintiffs make a related argument that State Farm should not be permitted to use any documents or evidence that it did not possess when it denied their insurance claim.  Id. at 8-9.  State Farm responds that plaintiffs have not identified any inconsistent positions taken by State Farm in regard to their insurance claim, and plaintiffs have made no attempt to show that Oklahoma courts have adopted the "mend the hold" doctrine.  Based on the pleadings, the Court finds no reason to believe that State Farm has deviated from its original reason for limiting payment on plaintiffs' insurance claim, and it does not appear that plaintiffs' argument is relevant in this case.  Plaintiffs are advised that State Farm may fully respond to new bases for coverage raised by plaintiffs that were not contemplated by State Farm when it originally denied plaintiffs' insurance claim.  This includes the use of discovery materials and evidence gathered by State Farm in defending against plaintiffs' claims in this case, and plaintiffs's request to apply the "mend the

21

hold" doctrine or preclude the use of any materials not in State Farm's possession when it denied plaintiffs' insurance claim is denied.

Finally, plaintiffs argue that State Farm should not be permitted to refer to Cannon as the corporate representative of Coppermark Public Adjusters, because State Farm failed to give notice that it was taking Cannon's deposition in that capacity.  Dkt. # 27, at 12.  State Farm responds that plaintiffs' argument is confusing and irrelevant, and it admits that Cannon did not give a deposition as the corporate representative of Coppermark.  Dkt. # 38, at 15.  Instead, Cannon was offered as an expert witness who was associated with RH Consulting.  Id.  Plaintiffs' argument concerning Cannon's status as a corporate representative of Coppermark Public Adjusters is irrelevant, and plaintiffs' request to exclude this evidence is granted.

**IT IS THEREFORE ORDERED** that Defendant State Farm Fire and Casualty Company's Motion for Partial Summary Judgment and Brief in Support (Dkt. #25) is **granted**.

**IT IS FURTHER ORDERED** that Defendant State Farm Fire and Casualty Company's Motion in Limine Regarding Alleged Roof Repairs to Other Homes (Dkt. # 28) and Defendant's Motion in Limine Regarding Punitive Damages, and Opening Brief in Support (Dkt. # 30) are **granted**.

**IT IS FURTHER ORDERED** that Defendant's Motion in Limine Regarding Evidence of Interior Damage, and Brief in Support (Dkt. # 29) is **denied**.

**IT IS FURTHER ORDERED** that Defendant State Farm Fire and Casualty Company's Motion to Limit Testimony of Greg Cannon and Opening Brief in Support (Dkt. # 33) is **granted in part** and **denied in part** as stated in this Opinion and Order.

**IT IS FURTHER ORDERED** that  Defendant State Farm Fire and Casualty Company's Omnibus Motion in Limine (Dkt. # 31) is **granted in part**, **denied in part**, and **moot in part** as stated in this Opinion and Order.

**IT IS FURTHER ORDERED** that  Plaintiffs' Motions *in Limine* and Brief in Support (Dkt. # 27) is **granted in part** and **denied in part** as stated in this Opinion and Order.

**DATED** this 2nd day of August, 2022.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE